The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, with the exception of some minor modifications.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim, and this claim is subject to the Workers' Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff-employee at the time of the alleged injury.
3. Defendant is insured by Aetna Life and Casualty Company.
4. At the time of the alleged injury, plaintiff's average weekly wage was $632.12, which yields a compensation rate of $406.00 per week.
5. Plaintiff was employed as a back-end maintainer at Stroh Container Corporation at the time of his injury.
6. Plaintiff sustained a compensable injury to his right shoulder on May 30, 1991.
7. Plaintiff remained out of work from August 5, 1991 through November 25, 1991, to recover from the first surgery on his right shoulder.
8. On November 26, 1991, plaintiff returned to work for Stroh at his former rate of pay.
9. From April 2, 1992 through April 21, 1992, plaintiff was removed once again from his employment by his physician for reasons causally related to his right shoulder injury.
10. On April 22, 1992, plaintiff returned to work for Stroh at his former rate of pay.
11. On May 11, 1992, plaintiff underwent a second surgery on his right shoulder. He was out of work from May 11, 1992 until June 25, 1992, when he returned to work at Stroh at his former rate of pay.
12. Plaintiff was again removed from his employment by his physician and stopped working from June 30, 1992 through July 19, 1992.
13. Aetna paid plaintiff temporary total disability benefits for each period he was out of work due to the injury through July 19, 1992, pursuant to a Form 21 Agreement dated July 2, 1992 and a Form 26 Agreement dated September 21, 1992.
14. Starting on or about July 20, 1992, due to his physician's restrictions, plaintiff was placed in a light duty job (can sorter) at his regular rate of pay. As a result of his job change, plaintiff's job classification also changed and he lost seniority.
15. American National Can Company purchased Stroh Container Corporation and laid plaintiff off on July 31, 1993, due to his medical restrictions and lack of seniority.
16. July 31, 1993 was the last date plaintiff worked at American National Can Company (formerly Stroh Container Corporation).
17. Plaintiff applied for and received unemployment compensation in the amount of $282.00 per week for 11 weeks from the State of North Carolina beginning with the week ending September 6, 1993 through the week ending November 15, 1993. American National Can paid plaintiff total supplemental unemployment benefits of $2,009.92 at the rate of $125.24 per week for 16 weeks beginning with the week ending September 6, 1993 and ending with the week ending December 20, 1993.
18. Aetna did not pay plaintiff any temporary total disability or permanent partial incapacity from the period of August 1, 1993 to the present.
19. Total Rehabilitation representatives assisted plaintiff in finding a job at Motel 6 in Winston-Salem, North Carolina. Plaintiff began his job as a desk clerk on November 11, 1993, and quit the job on December 7, 1993. Plaintiff earned $569.50 in wages from this position.
20. Plaintiff's average weekly wage at Motel 6 was $157.29.
21. Plaintiff worked a one-day job on December 10, 1993, for Winston Temporaries in a distribution job at Hanes Mall. He was paid $28.50.
22. On December 21, 1993, plaintiff advised Stroh that he was electing to take early retirement. Plaintiff was given early retirement from Stroh effective January 1, 1994.
23. Plaintiff was entitled to receive monthly retirement benefits of $396.50 from Stroh, but chose to receive the 50% joint survivor benefits which were $315.89 per month and which would allow his wife to continue receiving $157.95 after his death.
24. The early retirement benefits from Stroh to plaintiff were from Stroh annuities solely funded by Stroh.
25. Plaintiff received notice on or after January 15, 1994, that he had been awarded Social Security disability benefits and plaintiff has not sought employment since that date.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of hearing, plaintiff was sixty-three years old and had obtained his GED and two years of college education.
2. Plaintiff learned diesel, gasoline, and jet engine mechanics during his eleven years of service in the Navy and Air Force. Plaintiff has worked throughout his life primarily as a mechanic or as a tool maker. Plaintiff has also made signs, worked as a supervisor, and sold insurance.
3. Prior to his injury, plaintiff worked for 15 years for the defendant operating and maintaining the can-making and decoration equipment.
4. Prior to his May 30, 1991 injury, plaintiff was healthy and did not have any problems with his hands, arms, shoulders, neck, or back.
5. On May 30, 1991, plaintiff injured his right shoulder when he walked into the corner of one of the machines that he normally operated. Defendant accepted plaintiff's claim and agreed to pay him the benefits that he was entitled to receive under the Workers' Compensation Act.
6. Plaintiff was treated by Dr. Jerome E. Jennings and Dr. Louis Pikula, Jr. for his injuries. Dr. Jennings was the first doctor to see and treat plaintiff for his injuries.
7. Dr. Jennings originally diagnosed plaintiff's condition as a bursitis or tendinitis-type problem of the right shoulder. Dr. Jennings treated plaintiff with an injection of cortisone and took him out of work. It was Dr. Jennings' opinion that plaintiff's injury was a direct result of hitting his shoulder on the equipment.
8. When plaintiff failed to respond to the initial treatment, Dr. Jennings performed surgery which showed that plaintiff had a rotator cuff tear with impingement. Dr. Jennings felt the rotator cuff tear was a direct result of the original injury.
9. Plaintiff originally responded to the treatment but again began to have pain in his shoulder when he returned to work. Dr. Jennings performed a second operation to determine whether the first operation had healed, or whether he had missed any problems that may have existed. The second operation revealed that the first operation was successful and that there were no additional problems that had been missed. Dr. Jennings concluded that plaintiff's surgical scars did not completely heal and that plaintiff would continue to have problems with pain.
10. Thereafter, Dr. Jennings sent plaintiff to see Dr. Pikula. Dr. Pikula concluded that Dr. Jennings' treatment and diagnosis were correct, and he too concluded that plaintiff for some unexplainable reason had failed to heal and that he would continue to have pain associated with his right shoulder, arm, and hand.
11. As a result of the compensable injury by accident, plaintiff has a 25% permanent partial disability of the right shoulder. Plaintiff has been released back to light duty work with no lifting over his shoulder or any lifting of more than 15 pounds using the right shoulder.
12. His physicians discovered during the examinations that plaintiff had asymptomatic cervical spondylosis that was aggravated by the original injury. This condition caused plaintiff to suffer numbness, tingling, and pain in the right arm, hand, and wrist.
13. Defendants did not pay plaintiff for the time he was out of work from March 9 through March 13, 1993, for his visits to the emergency room and to Dr. Jennings due to pain in his hand. Furthermore, plaintiff was not paid for March 21 and 22, 1993 when he was out of work due to his injury.
14. Defendants have failed to pay the following medical bills for which plaintiff received treatment due to his injury: $68.00 to Dr. Jennings, $308.89 to Medical Park Hospital, and $42.46 for medication. Plaintiff has already paid Dr. Jennings $18.00, Medical Park Hospital $100.00, and purchased medications in the amount of $42.46.
15. Plaintiff has established that he is capable of earning weekly wages of $157.29 through his work at Motel 6.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his work with the defendant on May 30, 1991. N.C. Gen. Stat. 97-2(6).
2. As a result of the compensable injury by accident on May 30, 1991, plaintiff was disabled from work and is entitled to receive compensation for temporary total disability at the rate of $406.00 per week for the periods beginning March 9 through March 13, 1993; March 21 and 22, 1993; and August 1 through November 11, 1993. N.C. Gen. Stat. 97-29.
3. As a result of the compensable injury by accident on May 30, 1991, plaintiff was temporarily partially disabled beginning November 12, 1993 and continuing for a period up to 300 weeks from the date of injury, for which he is entitled to receive compensation at the rate of two-thirds (2/3) of the difference between his average weekly wage on the date of the compensable injury and his earnings of $157.29 per week at his employment at Motel 6. N.C. Gen. Stat. 97-30.
4. Defendant is entitled to a credit for the unemployment benefits paid to plaintiff, but defendant is not entitled to any credit for the retirement benefits that plaintiff has received. N.C. Gen. Stat. 97-42.1.
5. Plaintiff is entitled to the payment of all medical expenses incurred, or to be incurred, as a result of the compensable injury. N.C. Gen. Stat. 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to a credit for the unemployment benefits paid to plaintiff, defendant shall pay plaintiff temporary total disability compensation at the rate of $406.00 per week for the periods of March 9 through 13, 1993; March 21 and 22, 1993; and August 1 through November 11, 1993. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendant shall pay plaintiff temporary partial disability compensation at the rate of two-thirds (2/3) of the difference between his average weekly wage on May 30, 1991 and his earning capacity of $157.29 per week beginning November 12, 1993, and continuing, subject to the 300-week limitation of N.C. Gen. Stat. 97-30. Such amount as has accrued shall be paid in a lump sum, subject to the attorney's fee below.
3. An attorney's fee of twenty-five per cent (25%) of the compensation due plaintiff is awarded to plaintiff's counsel and shall be paid as follows: twenty-five per cent (25%) of the lump sum amount due plaintiff shall be deducted and paid directly to plaintiff's attorney. Thereafter, plaintiff's attorney shall receive every fourth check due plaintiff.
4. Defendants shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of the injury he sustained. Included in the approved medical expenses are the payment of the $50.00 owed to Dr. Jennings, the $208.00 owed to Medical Park Hospital, and reimbursement to plaintiff in the amount of $160.46 for medical expenses he has previously paid.
5. Defendants shall pay the costs of this appeal.
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ____________________ DIANNE C. SELLERS COMMISSIONER
S/ ____________________ COY M. VANCE COMMISSIONER